3:20-mj-00162

| | | |
|---|---|---|
| STATE OF OREGON | ) | |
| | ) ss: | AFFIDAVIT OF NATHAN MILLER |
| County of Multnomah | ) | |

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Nathan Miller, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since July 2014.  My current assignment is to the Portland, Oregon Field Office.  My training includes twenty-seven (27) weeks of Criminal Investigator and ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia.  As a Special Agent with ATF, part of my duties and responsibilities include conducting criminal investigations for possible violations of federal firearms, explosives, and arson laws.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Joseph James Ybarra.  As set forth below, I have probable cause to believe that Ybarra committed or attempted to commit an arson of a federal building, namely the Mark O. Hatfield United States Courthouse, violation of 18 U.S. Code § 844(f)(1).

3.      The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.  Because this affidavit is submitted for the limited purpose of establishing probable

**Page 1 – Affidavit of Nathan Miller**

cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.     18 U.S.C. § 844(f)(1) makes it an offense to maliciously damage or destroy, or to attempt to damage or destroy, any building or real or personal property owned, possessed, or leased in whole or in part by the United States by means of fire or an explosive.

## Statement of Probable Cause

5.     Since on or about May 26, 2020, protesters have gathered daily in Portland public areas including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza.  The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), the Mark O. Hatfield United States Courthouse, and the Edith Green-Wendell Wyatt Federal Building are directly across the street from those parks.  The United States of America owns the entire city block (Block #24) occupied by the Hatfield Courthouse, as depicted below.  Easements have been granted for the sidewalks surrounding the Hatfield Courthouse, but the property boundary extends past the sidewalks and into the streets surrounding the courthouse.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

**Page 2 – Affidavit of Nathan Miller**



6.      Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault.  Most violent of these impacting federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration and Customs Enforcement (ICE) was targeted by a Molotov [1]Cocktail.  The Hatfield Courthouse has experienced significant damage to the façade and building fixtures during the six weeks following that incident.  Additionally, mounted building security cameras and access control devices have been vandalized or stolen.  Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon

---

[1] The Federal "Molotov" definition from 18 U.S. Code § 232: An "explosive or incendiary device" means…(c) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

**Page 3 – Affidavit of Nathan Miller**

Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement

officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect

the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high

intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and

vulgar language from demonstrators while preforming their duties.

      7.     On July 22, 2020, Ybarra attempted to throw a suspected Molotov Cocktail into

the Mark O. Hatfield Courthouse. The western façade of the courthouse has been covered with

protective wooden siding as a result of widespread vandalism, which includes several shattered

windows and extensive graffiti. Unknown individuals removed part of the wooden barrier

(southern most window) affixed in front of the glass windows on the West Side of the courthouse

and broke the glass window behind the barrier, effectively creating an entry point into the

courthouse.

      8.     At approximately 0315 hours, two persons were seen on surveillance video

lighting the wick of a suspected Molotov Cocktail. The device in the video appeared to be a dark

glass bottle with a white wick extending from the top of it. One individual was wearing a black

sweatshirt, white athletic shorts with a dark stripe on each leg, and carrying a bag. This

individual was later arrested and identified as Ybarra. The other unknown individual was

wearing a light tee-shirt and dark pants (hereinafter S2). Ybarra moves some of the fencing that

was used to barricade the exposed opening to the courthouse. S2 lights the wick of the suspected

Molotov Cocktail and throws it at the aforementioned exposed opening to the courthouse. The

device does not break and appears to bounce off a gate and fall to the ground. Ybarra then picks

up the device and throws it again at the exposed opening. The wick of the device (still on fire) is

**Page 4 – Affidavit of Nathan Miller**

seen falling loose from the device onto a barricade pile. The device does not function. Ybarra

then picks up the device, throws it over his shoulder, and it breaks on the ground.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

**Page 5 – Affidavit of Nathan Miller**







**Page 6 – Affidavit of Nathan Miller**

9.      Ybarra stays in view of the surveillance camera near the attempted arson. S2 departs to an unknown location.  At approximately 0325 hours, members of United States Marshalls Service (USMS) Special Operations Group (SOG)[2] arrested Ybarra placed him in custody inside the courthouse.

10.      At approximately 0359 hours, I was contacted by Homeland Security Investigations (HSI) SA1[3], and advised of the attempted arson.  I asked HSI SA1 to collect any evidence of the suspected device if safe to do so.  I arrived at the courthouse at approximately 0445 hours and met with HSI SA1.  HIS SA1 provided me with evidence of two possible devices.  The first was a green glass Remy Martin bottle and the second was a brown Kombucha bottle.  I separated the bottles and sealed them in paint cans. HIS SA1 and I subsequently reviewed the aforementioned surveillance footage.

11.      At approximately 0553 hours, HSI SA1 and I interviewed Ybarra in a USMS holding cell at the courthouse.  I read Ybarra his rights per *Miranda* card. When asked if he understood his rights, Ybarra replied, "yeah."   I told Ybarra he the interview was being recorded and placed the recorder on the counter between us.  Ybarra was wearing the same clothes seen in the video minus a black sweatshirt that was with his property seized by USMS.

12.      I stated I reviewed the surveillance video, which depicted Ybarra attempt to throw the suspected Molotov Cocktail at the courthouse. Ybarra confirmed that he was the person pictured in the video surveillance holding the Molotov Cocktail.  I told Ybarra he was

---

[2] Identification of arrest team members of the USMS SOG team is known to me. For security reasons their names will not be included in this affidavit, but are readily available for the court if needed.

[3] Identification of the HSI Special Agent is known to me. For security reasons his/her name will not be included in this affidavit, but is readily available for the court if needed.

**Page 7 – Affidavit of Nathan Miller**

looking at serious charges for attempted arson of a Federal building, possession of a destructive device, and use of a destructive device in furtherance of the attempted arson. I told Ybarra if he were to be charged with all of the possible offenses, he would be looking at a mandatory prison sentence.

13.    I told Ybarra he could continue to talk to me or choose not to. I stated I was interested in information on other fires and the identification of S2. Ybarra stated it was his first time out in downtown Portland, Oregon and he was there to turn himself in on an outstanding warrant. Ybarra said he arrived downtown at approximately 1900 hours the night prior.    I stated the video depicted S2 throwing the same device. Ybarra stated, yeah it didn't work.    I told Ybarra I wanted to know what was going through his mind if he had only been downtown one night and committed such a serious offense.    I asked Ybarra if he was drinking or smoking anything.    Ybarra stated no.    Ybarra said he was there and thought it was cool.

14.    I showed Ybarra the bottles collected at the scene and Ybarra identified the green Remy Martin bottle as the one he threw. Ybarra said the bottle was not really filled up with liquid, but probably had alcohol. Ybarra said the bottle had towel or something lit on top. Ybarra said the brown bottle was not involved. Ybarra said some kid came up to him and handed him the bottle. Ybarra then imitated throwing the bottle. Ybarra said it didn't work so he just thought "that's life" and threw the bottle backwards. Ybarra identified S2 as the person in the surveillance video who gave him the device. Ybarra described him as a young Hispanic male.

15.    Ybarra stated he was homeless and lived in a tent in SE Portland. Ybarra said he did not have a cell phone number.

**Page 8 – Affidavit of Nathan Miller**

16.     I told Ybarra I would call the Assistant United States Attorney assigned to the case because they were the ones that made charging decisions. I told Ybarra I would return and let him know what the decision was so he knew what he was facing. I thanked Ybarra for talking with me and said that while he did not appear to be a hardened criminal, he got himself mixed up in a serious offense and everyone has to answer for his or her actions. Ybarra stated "yeah." The interview concluded at approximately 0604 hours.

17.     HIS SA1 and I reviewed the surveillance video and observed where the wick of the suspected Molotov Cocktail landed in the debris pile. We went to the area of the attempted arson and recovered the wick used in the suspected Molotov Cocktail.

<u>Conclusion</u>

18.     Based on the foregoing, I have probable cause to believe that Joseph James Ybarra attempted to maliciously damage by means of fire the wood-covered façade and the interior of the Hatfield Courthouse, by means of fire caused by the use of a Molotov Cocktail, a building wholly owned and used by the United States, in violation of 18 U.S.C § 844(f)(1). I therefore request that the Court issue a criminal complaint and arrest warrant charging Ybarra with that offense.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

**Page 9 – Affidavit of Nathan Miller**

19.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Parakram Singh.  AUSA Singh informed me that in his opinion, the affidavit is legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*(By telephone)*
Nathan Miller
ATF Special Agent


Sworn to by telephone or other reliable means in accordance with Fed. R. Crim. P. 4.1 at
_1:09_ p.m. on July 22, 2020.

HONORABLE JOHN V. ACOSTA
United States Magistrate Judge

**Page 10 – Affidavit of Nathan Miller**